IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIRGINIA GRAMAGLIA-PARENT, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRAVELERS HOME AND MARINE | : | |
| INSURANCE COMPANY, | : | No. 20-3480 |
| Defendant. | : | |

### MEMORANDUM OPINION

**Timothy R. Rice**                                                           **December 30, 2021**
**U.S. Magistrate Judge**

      This action arises from Defendant Travelers Home and Marine Insurance Company's ("Travelers") denial of Plaintiff Virginia Gramaglia-Parent's claim for payment of underinsured motorist coverage following her involvement in a motor vehicle accident. Gramaglia-Parent originally brought this action in the Court of Common Pleas, Philadelphia County; Travelers removed it to this Court. Gramaglia-Parent alleges that: 1) Travelers denied her insurance claim in breach of her automobile insurance policy ("Travelers Policy" or "Policy"); and 2) Travelers acted in bad faith, pursuant to 42 Pa. C.S.A. § 8371, by denying her insurance claim. See Compl. (doc. 1), ¶¶ 26-41. On December 22, 2020, I bifurcated the case to proceed first with the breach of contract claim, while staying discovery on the bad faith claim. See Order (doc. 20).

      Travelers seeks summary judgment on the breach of contract claim. See Motion for Summary Judgment (doc. 24). Travelers argues that its denial of Gramaglia-Parent's claim for UIM benefits was permitted because either the Policy's household vehicle exclusion or "regular use" exclusion precludes her recovery of UIM benefits. For the following reasons, I will grant judgment in favor of Travelers.

I.      LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." Id. I must view the facts and related inferences in the light most favorable to the nonmoving party. Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004). "[My] role is 'to determine whether there is a genuine issue for trial,' it is 'not . . . to weigh the evidence and determine the truth of the matter.'" Peroza-Benitez v. Smith, 994 F.3d 157, 164 (3d Cir. 2021) (quoting Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019)). "If there is no factual issue, and only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party." Campbell v. Travelers Home & Marine Ins. Co., – F. Supp. 3d –, No. 19-3226, 2021 WL 4037507, at *3 (E.D. Pa. Sept. 3, 2021) (citing Anderson, 477 U.S. at 250).

Under Pennsylvania law,[1] a party asserting a breach of contract claim must establish: "1) the existence of a contract, including its material terms; 2) breach of a duty imposed by the contract; and 3) resultant damages." Gladstone Tech. Partners, LLC v. Dahl, 222 F. Supp. 3d 432, 440 (E.D. Pa. 2016) (citation omitted). Interpreting an insurance contract is a question of law. Nautilus Ins. Co. v. Bike & Build, Inc. 340 F. Supp. 3d 399, 408 (E.D. Pa. 2018) (citing Kvaerner Metals Civ. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)). "[T]he goal in construing and applying the language of an insurance contract is to

---

[1] The parties agree that Pennsylvania law applies.

effectuate the intent of the parties as manifested by the language of the specific policy." First Liberty Ins. Co. v. McGeehan, 381 F. Supp. 3d 478, 482 (W.D. Pa. 2019) (citing 401 Fourth St., Inc. v. Invs. Ins. Grp., 879 A.2d 166, 171 (Pa. 2005); Lititz Mut. Ins. Co. v. Steely, 785 A.2d 975, 978 (Pa. 2001)), aff'd 809 F. App'x 75 (3d Cir. 2020). "Straightforward language in an insurance policy should be given its natural meaning." First Liberty Ins. Co., 809 F. App'x at 78 (quoting Lawson v. Fortis Ins. Co., 301 F.3d 159, 162 (3d Cir. 2002)). Ambiguity in an insurance contract exists where the language: "1) is reasonably susceptible to different constructions, 2) is obscure in meaning through indefiniteness of expression, or 3) has a double meaning." Id. (quoting Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 419 (3d Cir. 2011)). A mere disagreement over the terms of a provision does not render it ambiguous. Id. "Because '[i]nsurance contracts are presumed to have been made with reference to substantive law, including applicable statutes in force,' pertinent statutory provisions are deemed incorporated into the insurance contract." Willisch v. Nationwide Ins. Co. of Am., 852 F. Supp. 2d 582, 607 (E.D. Pa. 2012) (citing Clairton City Sch. Dist. v. Mary, 541 A.2d 849, 851 (Pa. Commw. Ct. 1988)); see also Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 147-48 (3d Cir. 1993) (citing, inter alia, Santos v. Ins. Placement Facility, 626 A.2d 1177, 1179 (Pa. Super. Ct. 1993) ("[P]ertinent statutory provisions of Pennsylvania insurance law are deemed incorporated into insurance policies[.]")).

**II.   FACTUAL BACKGROUND**[2]

On September 24, 2018, Gramaglia-Parent was a passenger in a 2016 Chevrolet Colorado when it was rear-ended by a vehicle operated by Sergey Bykovskiy. Joint Stipulation (doc. 24-1)

---

[2] All facts are viewed in the light most favorable to Gramaglia-Parent and, unless otherwise indicated, are derived from the parties' Joint Stipulation of Facts (doc. 24-1).

¶ 1. The Colorado was owned and operated by Gramaglia-Parent's husband, Bernard M. Parent, id., and it was insured by Grange Insurance Company for underinsured motorist coverage ("UIM"), id. at ¶ 5. Parent's policy with Grange did not list Gramaglia-Parent as a named insured. Id. at ¶ 7. The vehicle operated by Bykovskiy was insured by Allstate Automobile Insurance for bodily injury liability coverage. Id. at ¶ 3. Gramaglia-Parent suffered injuries to her head, neck, back, and spine. Id. at ¶ 2. Gramaglia-Parent received the full limits of bodily injury liability coverage, amounting to $15,000, from Allstate in December 2019. Id. at ¶ 4. She received the full limits of UIM coverage from Grange, amounting to $250,000, in January 2020. Id. at ¶ 6.

At the time of the accident, Gramaglia-Parent was insured under the Travelers Policy (policy no. 945052767 101 2), with an effective policy period of August 1, 2018 to February 1, 2019. Id. at ¶ 11; see also id. at Ex. A (Travelers Policy). Gramaglia-Parent initially obtained the Travelers Policy in 2008, before her marriage to Parent; at the time, she was single, lived alone, and had only one vehicle. Id. at ¶¶ 17, 19-20; see also id. at Ex. B (Travelers Policy Declarations); Ex. C (2008 Travelers Application Documents). The Travelers Policy listed a single insured vehicle – a 2016 Mercedes GLC 300 – that was not involved in the September 2018 accident. Id. at ¶¶ 13-14, see also id. at Ex. A. It did not list the Colorado. See id. at ¶ 15 ("Gramaglia-Parent never insured more than a single vehicle under her policy with Travelers from 2008 through the date of the motor vehicle collision on September 24, 2018."). Gramaglia-Parent did not possess a key to the Colorado and had operated it "on only one or two occasions." Id. at ¶¶ 8, 10. If she was to use the Colorado, "Gramaglia-Parent would have had to ask Parent for permission or otherwise make special arrangements with Parent because the Colorado was Parent's primary means of transportation and he used it regularly." Id. at ¶ 9. Gramaglia-Parent

and her husband lived together at the time of the accident. Compare Mot. for Summary Judgment, Ex. 2 at ¶ 1(b) (listing Gramaglia-Parent's present address, and address where she has resided for the past ten years to include at time of the accident) with id. at ¶ 18(a) (listing Gramaglia-Parent's husband's address at the time of the accident).

The Travelers Policy provided "UIM coverage in the amount of $250,000.00 per person, $500,000.00 per accident, non-stacked." Joint Stipulation ¶ 11. In 2008, Gramaglia-Parent executed a stacking waiver for UIM benefits, id. at ¶ 17, which included the following language:

---

**PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE – STACKED LIMITS**

Note: This form only needs to be completed if you wish to reject the stacking option for underinsured motorists coverage.

If you have chosen underinsured motorists coverage, your next option is to determine if you wish to stack the limits of this coverage. With "stacking", the limit of liability is determined by adding the underinsured coverage limits for each motor vehicle which covers the injured person as an insured. If you reject "stacking", the total limit of coverage will be the stated limit for the motor vehicle as to which the injured person is insured. You will save on this part of your premium if you reject "stacking". "Stacking" can only be used if you have more than one motor vehicle. Please contact Travelers or your insurance representative for a premium comparison.

To reject stacked limits of underinsured motorists coverage, the insured named first on the application or the declarations must sign and date the rejection of stacked underinsured coverage limits below. If you want to stack this coverage, do not sign this waiver and go to the next page.

**REJECTION OF STACKED UNDERINSURED COVERAGE LIMITS**

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premium will be reduced if I reject this coverage.

_____
Signature of First Named Insured

1/04/08
Date

---

Id. at Ex. C. The Travelers Policy also featured an exclusion provision:

> We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by

5

> you or any "family member" while "occupying" or when struck by any motor vehicle that you or any "family member" owns; or that is furnished or available for your or any "family member's" regular use, which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

Id. at ¶ 24 (citing Ex. A). The Policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household[.]" Id. at Ex. A.

Following the September 2018 collision, counsel for Gramaglia-Parent requested that Travelers tender the limits of UIM coverage under the Travelers Policy to Gramaglia-Parent. Id. at ¶ 21. Travelers declined the request in a letter dated February 13, 2020, noting that:

> Based on review of the policy endorsement, we must decline your request for coverage consideration, since the vehicle Ms. Gramaglia-Parent was occupying at the time of loss is not insured under our Insured's personal automobile policy written through The Travelers Home and Marine Insurance Company. The vehicle is insured through Grange Mutual (Trustgard) Insurance and is available for the insured's regular use as a household resident.
>
> * * *
>
> To summarize, in part, the preceding policy quotations, we must decline coverage for underinsured motorist coverage since the vehicle your client was occupying at the time of loss is not an Insured vehicle under this policy and is available/furnished for her regular use.

Id. at ¶ 22 (quoting Ex. D (Letter, dated February 13, 2020)). On May 1, 2020, counsel for Gramaglia-Parent requested that Travelers reconsider its denial. Id. at ¶¶ 25-26 (citing Ex. E (Letter, dated May 1, 2020)). Travelers responded on May 13, 2020, renewing its previous denial and stating:

> At your request, we have reconsidered our denial of your client's (UIM) Underinsured Motorist claim. The decisions you cite are federal district court cases and are not binding pronouncements of Pennsylvania law. It is Travelers' position that the Supreme Court's decision in Gallagher v. GEICO is factually and legally distinguishable from the circumstances presented by your client's

6

>   claim. As such, we must respectfully inform you that we will be
>   upholding our denial at this time.

Id. at 27 (quoting Ex. F (Letter, dated May 13, 2020)).

### III. ANALYSIS

Travelers argues that either the Policy's "regular use" exclusion or the household vehicle exclusion bars Gramaglia-Parent's UIM claim. Gramaglia-Parent contends that those exclusions are unenforceable under Pennsylvania law.

Because the enforceability of the household vehicle exclusion depends on the validity and scope of the Policy's stacking waiver, I consider that issue first. As explained below, Gramaglia-Parent validly waived inter-policy stacking under the Policy, rendering the Policy's household vehicle exclusion enforceable under Pennsylvania law. Given the lack of a genuine dispute of material fact that an application of the household vehicle exclusion bars Gramaglia-Parent's claim to UIM coverage, I will grant summary judgment.

#### A. Gramaglia-Parent Waived Inter-Policy Stacking Under the Travelers Policy

Gramaglia-Parent argues that the executed stacking waiver is "invalid, unenforceable, and not sufficient to waive inter-policy stacking" due to ambiguous language superfluous to 75 Pa. C.S. § 1738(d)'s mandated requirements.[3] Opp. Br. (doc. 25) 16. I disagree.

The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") requires insurers to offer UIM coverage to insureds. 75 Pa. C.S.A. §§ 1731(a), (c). Unless waived, see § 1731(c.1), the UIM coverage "provide[s] protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor

---

[3] Intra-policy stacking is not at issue in this case given that Gramaglia-Parent had only insured one vehicle on the Policy. See Erie Ins. Exch. v. Petrie, 242 A.3d 915, 917 n.2 (Pa. Super. Ct. 2020); Joint Stipulation ¶¶ 14-15.

from owners or operators of underinsured motor vehicles." § 1731(c). An insured opting for UIM coverage may elect to "stack" UIM benefits, i.e., "add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." McGovern v. Erie Ins. Grp., 796 A.2d 343, 344 (Pa. Super. Ct. 2002); see also Urban v. Allstate Fire & Cas. Ins. Co., No. 20-3490, 2021 WL 4774866, at *11 (E.D. Pa. Oct. 13, 2021) ("'Stacking' is when the insured person is entitled to coverage equal to the 'sum of the limits for each motor vehicle as to which the injured person is an insured.'") (quoting § 1738(a)). There are two types of stacking: intra-policy ("when more than one vehicle is insured under a single policy of insurance") and inter-policy ("the addition of coverages for vehicles insured under different policies of insurance"). Erie Ins. Exch. v. Petrie, 242 A.3d 915, 917 n.2 (Pa. Super. Ct. 2020); see also Kuhns v. Travelers Home & Marine Ins. Co., 283 F. Supp. 3d 268, 274-75 (M.D. Pa. 2017).

Although stacked UIM coverage is the default coverage available to every insured, see Gallagher v. GEICO Indem. Co., 201 A.3d 131, 138 (Pa. 2019) (citing § 1738(a)), an insured may waive stacked UIM coverage by signing a statutorily-prescribed waiver form, see id.; § 1738(b) ("Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured."); § 1738(d)(2) (stacking waiver form). A waiver form that does not comply with § 1738 is considered void. See § 1738(e). "If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage." Gallagher, 201 A.3d at 137 (citing § 1738(c)).

Gramaglia-Parent challenges the validity of the Policy's stacking waiver. She disputes language that Travelers included in a stand-alone, instructional section on the same page as, but immediately preceding, the statutorily-prescribed waiver language: "'Stacking' can only be used if you have more than one motor vehicle." Joint Stipulation Ex. C. She argues that not only is this language incorrect, but it also "interjected ambiguity into the statutory form because it was entirely reasonable for . . . [her] to sign the waiver form based on Travelers' instruction that she did not qualify for 'stacking' because she only had one motor vehicle." Opp. Br. 19. She claims that this ambiguity prevented her from "receiving 'full information regarding the availability of stacked coverage'" and did not put her on notice that, by executing the waiver form, she was waiving inter-policy stacking. Id. at 20 (quoting Rupert v. Liberty Mut. Ins. Co., 781 A.2d 132, 135 (Pa. 2001) (Cappy, J., concurring)). In response, Travelers maintains that the stacking waiver conforms with § 1738's requirements, and the instructional language Gramaglia-Parent challenges is a "clarifying, factual statement" that is an "accurate" reflection of the law. Reply. Br. (doc. 26) 4-6.

Even if the instructional language in the stacking waiver was unclear, ambiguous, and not instructive to a layperson deciphering the contours of stacking,[4] no reasonable jury could conclude that this language alone – viewed in the light most favorable to Gramaglia-Parent – invalidates the stacking waiver. Although § 1738(e) requires that a stacking waiver form comply

---

[4] See Prudential Prop. & Cas. Ins. Co. v. Hinson, 277 F. Supp. 2d 468, 471-72 (E.D. Pa. 2003) ("The Pennsylvania Supreme Court has consistently held that the interpretation of an insurance contract is a matter of law for the courts to decide, and that when the policy language is clear and unambiguous, a court should give effect to the language of the contract. On the other hand, a given provision is ambiguous if reasonably susceptible of more than one interpretation. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Nevertheless, as a general rule of construction, a court should read a policy to avoid ambiguities, if possible.") (internal quotations and citations omitted).

with the requirements of § 1738, nowhere does § 1738 dictate what an insurer may, or may not, include in a separate, instructional section appearing on the same page as the waiver form.  Cf. Leitzel v Merchs. Ins. Co. of N.H., Inc., No. 05-1069, 2006 WL 266128, at *4 n.4 (M.D. Pa. Feb. 2, 2006) (noting that § 1738 "does not require that a rejection/waiver of . . . stacked UIM coverage must be provided on its own sheet of paper").  As the Pennsylvania Supreme Court has held regarding the validity of UIM coverage waivers under §1731, "[i]t is indisputable that, if an insured waives UIM coverage by signing a verbatim reproduction of the rejection form contained in Subsection 1731(c) of the MVFRL, the General Assembly's objectives are fulfilled, as a signature on that form evinces that the insurer offered the insured UIM coverage and the insured opted out of that coverage."  Ford v. Am. States Ins. Co., 154 A.3d 237, 245 (Pa. 2017).  This reasoning is instructive to assessing the validity of stacking waivers under § 1738.  Cf. Am. Int'l Ins. Co. v. Vaxmonsky, 916 A.2d 1106, 1109 (Pa. Super. Ct. 2006) (noting that § 1738(e) imposes a "less exacting" standard compared to waivers under §1731 and can be helpful in assessing the validity of waivers under § 1731).  The stacking waiver form that Gramaglia-Parent executed is identical to, and therefore complies with, the requirements mandated by §1738(d)(2).  An ambiguous sentence in a separate section does not alone render the Policy's waiver invalid.

Gramaglia-Parent concedes that a waiver form executed in compliance with the requirements of § 1738(d)(2) may waive inter-policy stacking.  See Opp. Br. 16-17 (citing Craley v. State Farm Fire & Cas. Co., 895 A.2d 530 (Pa. 2006)).  In Craley, the Pennsylvania Supreme Court considered, inter alia, under what circumstances the execution of a stacking waiver form conforming to § 1738(d)(2) waived inter-policy stacking.  As the court later noted in Donovan v. State Farm Mut. Auto. Ins. Co., 256 A.3d 1145, 1153 (Pa. 2021), the court in Craley had acknowledged that § 1738(d)(2) "was phrased in terms of intra-policy stacking involving

multiple vehicles on a single policy, rather than inter-policy stacking of multiple policies." Yet, as Donovan reiterates, the court in Craley held that an executed stacking waiver form that complies with § 1738(d)(2) is "enforceable as a knowing waiver of inter-policy stacking in single-vehicle policies. . . . because [the insured] 'could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on "the policy."'" Id. (quoting Craley, 895 A.2d at 542); see also Donovan v. State Farm Mut. Auto. Ins. Co., 392 F. Supp. 3d 545, 550 (E.D. Pa. 2019).

As in Craley, Gramaglia-Parent insured only a single vehicle with Travelers. See Joint Statement ¶ 15 ("Gramaglia-Parent never insured more than a single vehicle under her policy . . ."). With only one vehicle on the policy – and intra-policy stacking therefore infeasible – she could not have thought that she was paying a lower premium to waive something that was not available to her. The Policy's stacking waiver is valid for inter-policy stacking. See Gallagher, 201 A.3d at 137 ("Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.") (citation omitted); see, e.g., Bubonovich v. State Farm Mut. Auto. Ins. Co., No. 19-1537, 2021 WL 848885, at *2 (W.D. Pa. Mar. 4, 2021) ("The parties . . . agree that . . . [the policy in question] covered a single motor vehicle. As such, in signing the Stacking waiver, one can reasonably infer that [the insured] knew that he was signing an inter-policy waiver, rather than an intra-policy waiver (which would only be possible if the subject policy covered multiple vehicles).").

### B.     The Policy's Household Vehicle Exclusion Is Enforceable Under Pennsylvania Law

Although Gramaglia-Parent executed a valid waiver of inter-policy stacking, she claims that I must interpret the Pennsylvania Supreme Court's holding in Gallagher to void all household vehicle exclusions – regardless of the underlying circumstances of the case – based on the MVRFL.  See Opp. Br. 13-16.  Travelers argues that Gallagher does not apply to render the Policy's household vehicle exclusion unenforceable because of the Policy's valid inter-policy stacking waiver.  See Mot. 11-21.  I agree with Travelers.

"This area of the law is not particularly clear and straightforward."  Erie Ins. Exch. v. Mione, 253 A.3d 754, 760 (Pa. Super. Ct. 2021).  In Gallagher, the Pennsylvania Supreme Court was tasked with considering the enforceability of a household vehicle exclusion when Gallagher, the insured, did not execute a stacking waiver pursuant to § 1738 and thus paid a premium for stacking coverage under the relevant policy.  Gallagher held two insurance policies with Geico: one covering his motorcycle, and the other covering his automobiles.  Gallagher, 201 A.3d at 132.  Both policies provided for stacked UIM coverage.  Id. at 132-33.  Gallagher was injured in an accident while riding his motorcycle.  Id. at 132.  He received the full policy limits of UIM coverage under the motorcycle policy for his injuries, but Geico denied his claim for UIM coverage under the automobile policy because "the household vehicle exclusion precluded Gallagher from receiving stacked UIM coverage pursuant to that policy."  Id. at 133.  The Gallagher court held that the household vehicle exclusion, "buried in an amendment, is inconsistent with the unambiguous requirements [of] Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a de facto waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form."  Id. at 138.  Subsequent federal and state courts have

12

been divided over the scope of Gallagher's holding, specifically whether it voids all household vehicle exclusions, regardless of the policy. Compare Petrie, 242 A.3d at 922 ("[O]ur Supreme Court [in Gallagher] issued a broad holding that the household exclusion provision cannot be used to skirt the express requirement under Section 1738 that an insurer must receive an insured's written acknowledgement that he knowingly decided to waive stacked UM/UIM coverage. That holding is not limited to the facts set forth in Gallagher, but one that finds that the exclusion is inconsistent with the requirements of Section 1738 of knowing waiver – a holding that is applicable to all policies for automobile insurance.") (internal citation omitted) and Donovan, 392 F. Supp. 3d at 547 ("With respect to the enforceability of the household exclusion, the broad language of the Supreme Court in Gallagher favors a conclusion that such provisions are per se unenforceable.") with Mione, 353 A.3d at 765-66 ("Gallagher does not seem to invalidate household exclusions in all cases . . . . Instead, Gallagher has been interpreted by this Court to hold that a household exclusion cannot be used to evade Section 1738's explicit requirements for waiving stacking.") (footnote omitted) and Erie Ins. Exch. v. King, 246 A.3d 332, 341-43 (Pa. Super. Ct. 2021) (narrowly interpreting Gallagher to hold that the household vehicle exclusion remains enforceable in the non-stacking context); see also Dunleavy v. Mid-Century Ins. Co., 460 F. Supp. 3d 602, 608 n. 1 (W.D. Pa. 2020) ("Gallagher is, truth be told, a bit puzzling.").

Although courts have interpreted Gallagher to leave open the possibility that a household vehicle exclusion would be void even when the policy includes a valid waiver of inter-policy stacking, the Pennsylvania Supreme Court in Donovan clarified Gallagher's scope.[5] Responding to three questions of law certified by the Third Circuit regarding the MVFRL, the Donovan court

---

[5] Donovan was decided subsequent to the parties' briefing on Travelers' motion for summary judgment. Travelers addressed Donovan in a subsequent letter brief (doc. 33); Gramaglia-Parent's subsequent letter brief (doc. 32) did not discuss Donovan.

concluded that, pursuant to Gallagher, "the household vehicle exclusion is unenforceable absent a valid waiver of inter-policy stacking[.]" 256 A.3d at 1147. It reasoned that:

> [T]he insured did not validly waive inter-policy stacking. Whether the insured did not sign a waiver, as in Gallagher, or signed a deficient waiver as to inter-policy stacking, as in the case at bar, the result is the same: the policy defaults to inter-policy stacking of UM/UIM coverage. In either case, the household vehicle exclusion cannot operate as a de facto waiver of inter-policy stacking because it fails to provide the insured with a knowing waiver of that coverage. Accordingly, as in Gallagher, the household vehicle exclusion cannot be enforced to waive inter-policy stacking in regard to [the policy in question] as it does not comply with the requirements for waiver of stacking under Section 1738(d).

Id. at 1160.

Unlike Donovan, where the "absen[ce] [of] a valid waiver of inter-policy stacking" rendered "the household vehicle exclusion . . . unenforceable," Gramaglia-Parent waived inter-policy stacking by executing a valid waiver form pursuant to § 1738(d)(2). Id. at 1147. There is no "default[] to inter-policy stacking of . . . UIM coverage" here because the valid waiver had already precluded inter-policy stacking. Id. at 1160. Accordingly, the household vehicle exclusion cannot "operate as a de facto waiver of inter-policy stacking" because the valid waiver form that Gramaglia-Parent executed "provide[s] [her] with a knowing waiver of that coverage." Id.; see also Travelers Letter Br. (doc. 33) (discussing the applicability of Donovan). The valid stacking waiver mitigates the concern that Gallagher raises – namely that "household vehicle exclusions should not and cannot operate as a pretext to avoid stacking" – because stacking here has been knowingly waived. Gallagher, 201 A.3d at 138. Additionally, enforcing the household vehicle exclusion here does not run afoul of the "age-old rubric[]" in the insurance industry that the Supreme Court in Gallagher was careful to not discredit: "an insured should receive the

14

coverage for which he has paid." Id.  Gramaglia-Parent did not pay for stacking; enforcing the household vehicle exclusion does not deny her the coverage for which she had paid.

Gallagher does not render the Policy's household vehicle exclusion unenforceable under these undisputed facts.

**C.     There Is No Genuine Dispute of Material Fact Regarding Travelers' Denial of Gramaglia-Parent's Claim for UIM Benefits Under the Household Vehicle Exclusion**

Given the enforceability of the Policy's household vehicle exclusion, I must decide whether there is a genuine dispute of material fact as to Travelers' denial of Gramaglia-Parent's claim for UIM benefits based on the Policy's household vehicle exclusion.[6]  That exclusion states, "We do not provide . . . Underinsured Motorists Coverage for 'bodily injury' sustained by

---

[6] Travelers grounded its denial of Gramaglia-Parent's UIM claim in an application of the Policy's UIM exclusionary provisions, including the household vehicle exclusion.  See Joint Stipulation ¶ 22 (citing Ex. D ("[In] respon[se] to injuries sustained by Virginia Gramaglia-Parent, while occupying a vehicle owned/operated by her husband, Bernard Parent, on 09/24/2018 . . . . [W]e must decline your request for coverage consideration, since the vehicle Ms. Gramaglia-Parent was occupying at the time of loss is not insured under our Insured's personal automobile policy written through The Travelers Home and Marine Insurance Company.  The vehicle is insured through Grange Mutual (Trustgard) Insurance and is available for the insured's regular use as a household resident.") (emphasis added)).  Travelers moves for summary judgment based on an application of either the household vehicle exclusion or the "regular use" exclusion.

Notably, Travelers did not deny Gramaglia-Parent's UIM claim on the validity of the Policy's stacking waiver.  Consequently, I do not address whether the Policy's valid stacking waiver would bar Gramaglia-Parent's claim, even in the absence of an enforceable household vehicle exclusion.  I note that at least one district court has held that an insurer's denial of UIM coverage based on the existence of a valid stacking waiver absolves the court of having to consider the applicability of a household vehicle exclusion.  See Bubonovich v. State Farm Mut. Auto. Ins. Co., No. 19-1537, 2021 WL 848885, at *2 (W.D. Pa. Mar. 4, 2021) ("[The insurer] also refused [plaintiff's] claim due to . . . [the relevant policy's] executed Stacking Waiver.  The Court need not delve into the applicability of a provision constituting de facto waiver when parties agree that there is a relevant executed waiver in this case.  As such, the applicability of Gallagher and the household vehicle exclusion will not be discussed further.").

15

you or any 'family member' while 'occupying' or when struck by any motor vehicle that you or any 'family member' owns." Joint Stipulation ¶ 24 (quoting Ex. A).  The Policy's definition of "family member" includes Gramaglia-Parent's husband, who at the time of the accident lived in the same home as Gramaglia-Parent.  <u>Id.</u> at Ex. A (defining "family member" as "a person related to you by blood, <u>marriage</u> or adoption <u>who is a resident of your household</u>[.]") (emphasis added); <u>compare</u> Mot. for Summary Judgment, Ex. 2 at ¶ 1(b) (listing Gramaglia-Parent's present address, and address where she has resided for the past ten years to include at time of the accident) <u>with id.</u> at ¶ 18(a) (listing Gramaglia-Parent's husband's address at the time of the accident).  The plain language of this provision precludes Gramaglia-Parent from recovering UIM benefits for injuries sustained while a passenger in the Colorado on September 24, 2018.[7]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  An appropriate order follows.

BY THE COURT:

/s/ Timothy R. Rice

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

---

[7] Because the household vehicle exclusion applies to preclude Gramaglia-Parent's UIM claim, I do not address the applicability of the "regular use" exclusion, to include whether such a provision remains enforceable following the Superior Court's recent decent in <u>Rush v. Erie Ins. Exch.</u>, – A.3d –, 2021 WL 4929434 (Pa. Super. Ct. Oct. 22, 2021).